Ben A. O'DELL, et al., Appellants,

v.

**CITY OF BRECKENRIDGE,**
**Respondent.**

**No. WD 46928.**

Missouri Court of Appeals,
Western District.

July 6, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 31, 1993.

Dana J. Macoubrie, Chillicothe, for appellants.

Terry M. Evans, Trenton, for respondent.

Before LOWENSTEIN, C.J., and SPINDEN and SMART, JJ.

LOWENSTEIN, Chief Judge.

This case involves a summary judgment granted against the appellants in a suit that involved a fire hydrant that failed to provide water to extinguish a fire on the appellants' property. The appellants alleged the fire hydrant constituted a dangerous condition of public property. "Dangerous condition" of public property is an exception to sovereign immunity which would allow the appellants to recover damages. The appellants include: Ben O'Dell's sister and brother-in-law whose names appear on the deed to the current home and Ben O'Dell, his ex-wife and grandchildren who lived on the property. Ben O'Dell had started a fire in an outbuilding on his property but soon lost control. When the fire hydrant did not work, Ben O'Dell and his family, lost their old and current homes and their contents in the fire.

The appellants' petition for damages alleged an "empty waterline or malfunctioning fire hydrant was a dangerous condition" that prevented the respondent, City of Breckenridge (City), from extinguishing the fire. The City filed a motion for summary judgment that alleged it owed no duty to the appellants. The trial court granted the motion for summary judgment. This appeal followed.

The facts viewed in the light most favorable to the appellants reveal the following: Fire destroyed three buildings on the O'Dell property on March 21, 1991. Ben O'Dell purposely set fire to an old chicken house on his property using gasoline. The fire burned faster than he anticipated. In an effort to keep the fire from spreading to his old house which was 25–30 feet from the chicken house, O'Dell sprayed water on the south side of the house. The old house caught fire, anyway. O'Dell tried to extinguish the fire with his garden hose. When that did not work, he told his ex-wife to go next door and call the fire department. At this time, O'Dell put a ladder up to the side of his current house, which was about fifteen feet from the burning old house. He climbed on top of his current home and

sprayed water on the roof to keep the house from scorching.

When the firemen arrived, they hooked up their hose to the fire hydrant, but the hydrant supplied no water. The firemen began pumping water out of one of the fire trucks to put out the fire on the old house. Before the firemen extinguished the fire on the old house, the O'Dells' current home caught fire. Soon thereafter, the fire truck ran out of water. The fire destroyed the O'Dells' current home and all of its contents. The appellants filed suit and alleged the malfunctioning hydrant was a dangerous condition of public property. The trial court granted summary judgment and stated the City owed no individual duty to the appellants. For their one point on appeal, the appellants contend the trial court erred when it found the City did not owe a duty to the individual plaintiffs and granted summary judgment. The appellants allege they sustained the damage because of a dangerous condition, the malfunctioning fire hydrant. As such the appellants believed they had a cause of action against the City.

■■■ Our supreme court recently re-examined the appropriate guidelines trial courts should consider when they grant summary judgments. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 So.2d 371 (Mo. banc 1993). Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *ITT*, 854 S.W.2d at 376; Rule 74.04(c). *Id.*, at 376. This court reviews the record in the light most favorable to the party against whom judgment was entered including all reasonable inferences. *Id.*, at 376.

■■■ Although the appellants allege a dangerous condition in an attempt to bypass the public duty rule, the appellants' claim really deals with the failure by the city to provide fire protection. *Harris v. City of Kansas City*, 759 S.W.2d 236, 237 (Mo.App.1988). "The threshold requirement to establish tort liability is the existence of a legal duty on the part of the

defendant to conform to a certain standard of conduct to protect others against risks." *Lawhon v. City of Smithville*, 715 S.W.2d 300, 302 (Mo.App.1986). Municipalities are, in general, not liable for torts arising out of the performance of governmental functions. *Harris*, 759 S.W.2d at 238. The creation of a municipal fire department is for the benefit of the general public. *Id.* Ordinarily, a municipality bears no liability for any act or omission of the municipality associated with the performance of fire service, a governmental function. *Id.* As such, the city owed no duty to the appellants. The trial court properly granted summary judgment in favor of the City as the City was entitled to judgment as a matter of law.

Without a duty, this court believes the appellants could not make a claim for negligence under the sovereign immunity statute. The statute's prefatory paragraph states public entities retain sovereign immunity to the extent it existed at common law except that "the immunity of the public entity from liability and suit for compensatory damages for negligent acts or omissions is hereby expressly waived." § 537.-600.1, RSMo Cum.Supp.1993. The statute goes on to list the exceptions which include "dangerous condition" of public property. § 537.600.1(2). Included under the "dangerous condition" exception, the plaintiff must prove a public employee "negligently" created the dangerous condition § 537.-600.1(2). If cities and their employees owe no duty to individuals this court believes the plaintiff could not bypass the public duty doctrine and invoke an exception to sovereign immunity. In any event, there is some authority out of the Eastern district that even if the public duty doctrine applied to a situation, the statute that waives sovereign immunity would still provide relief. *Fox v. City of St. Louis*, 823 S.W.2d 22, 24–25 (Mo.App.1991). In *Fox*, the court held the statute that waives sovereign immunity codifies the common law and "constitutes a separate waiver of immunity even in those situations in which the 'public duty' rule might otherwise apply to deny a civil action for damages for negligence

arising out of duties to the general public." *Id.* at 24–25. This court held in *Beaver v. Gosney*, 825 S.W.2d 870, 873 (Mo.App.1992) that the abrogation of sovereign immunity in two situations "in no way impliedly abrogated the public duty doctrine." Even if this court followed the reasoning of the Eastern District, this court would still affirm the trial court's decision.

In 1978, the legislature re-established sovereign immunity in response to the Missouri supreme court's abrogation of the common law doctrine in *Jones v. State*, 557 S.W.2d 225 (Mo. banc 1977). *Wollard v. City of Kansas City*, 831 S.W.2d 200, 202 (Mo. banc 1992). The statute, § 537.600, waives sovereign immunity in two instances: (1) where injuries result from the negligent acts or omissions by public employees in connection with the operation of motor vehicles; and (2) where injuries are caused by the dangerous condition of public property created by the acts or omissions of an employee of the public entity. *Beaver*, 825 S.W.2d at 872. The appellants allege the City waived sovereign immunity under the exception which allows liability for injuries caused by the dangerous condition of public property. § 537.600.1(2).

■ The appellants attempt to allege the lack of water in the fire hydrant created a dangerous condition. To assert a claim under the "dangerous condition" waiver of sovereign immunity, the appellants had to allege facts to show: (1) a dangerous condition of the property; (2) that the plaintiff's injuries directly resulted from the dangerous condition; (3) that the dangerous condition created a reasonably foreseeable risk of harm of the kind plaintiff incurred; and (4) that a public employee negligently created the condition or that the public entity had actual or constructive notice of the dangerous condition in sufficient time to have taken measures to protect against the condition. *Chase v. City of St. Louis*, 781 S.W.2d 571, 572 (Mo.App.1989).

■ In *Chase*, a case with facts similar to the one at bar, the appellant's daughter died in a fire when the fire department arrived and discovered the fire hydrants in the area failed to supply water. *Id.* at 571.

The appellant sued the City of St. Louis and the owner of the rooming house where her daughter died. *Id.* The appellant alleged she adequately pled the "dangerous condition" exception to sovereign immunity when she stated "[t]he fire department responded to said alarm but water hydrants in the vicinity were inoperable ..." *Id.* at 572. "Dangerous condition" as used in the statute, § 537.600, means a defect in the physical condition of the property. *Kanagawa v. State By and Through Freeman*, 685 S.W.2d 831, 835 (Mo. banc 1985). The Eastern District said the petition failed to allege the hydrants suffered a physical defect created by the acts or omissions of the fire department or any city employee. *Id.* The court stated "... negligence must be predicated on an act by defendant ... appellant's petition is completely devoid of facts showing how the hydrants were defective and her petition does not base her allegation of negligence on any act or omission by a city employee. Neither are there any facts alleging that the city had actual or constructive notice of a defect in time to take action to remedy it." *Id.* As such, the court upheld trial court's dismissal of the appellant's suit.

■ As in *Chase*, this court in *Harris*, 759 S.W.2d at 238, rejected the appellants' attempt to allege the failure to maintain continuous water service in the area of their property created a dangerous condition for which § 537.600, waived immunity. In that case, the appellants' home burned down when the fire hydrant failed to produce water due to the city working on the water lines. *Id.* at 236. The court noted the appellants had not alleged the hydrant was in need of repair. *Id.* at 238. The appellants failed to meet the requisite standard for defective condition of public property because the city had turned off the water to make repairs. *Id.* "The discontinuance of water service in this circumstance is not by the broadest scope of the term a defect in the condition of city property." *Id.* The appellants in this case claimed an "empty water line or malfunctioning fire hydrant" was a dangerous condition that prevented the City of Brecken-

ridge from extinguishing a fire on the appellants' property. They allege their petition, unlike the appellant in *Chase*, meets the necessary allegation of a defect in the hydrant. To the contrary, the appellant's *petition does not allege a physical defect in* the property only that the hydrant "malfunctioned." This does not demonstrate the hydrants were defective as contemplated by the statute.

■ Even if this court allowed the petition to survive summary judgment on the contention of a physical defect, the statute, § 537.600.1(2), contemplates the public body may be excused from liability if the public entity takes measures to protect against the dangerous condition. *Harris*, 759 S.W.2d at 238. The appellants argue the City had notice the hydrant did not work when fire fighters showed up to fight a fire a year before the appellants' March 1991 fire. In the prior year, spring of 1990, the hydrant failed to supply water. The appellants' neighbor's house burned to the ground. The City presented evidence through interrogatories it replaced the hydrant in November 1990 and checked the new hydrant to make sure it worked. At the time the City replaced and checked the hydrant, about three months before the appellants' fire, the hydrant "was in operable condition." Also, in the fall of 1990, after the fire at the neighbor's house, the City replaced the water lines. The City had no notice the hydrant was inoperable anytime after it was replaced and checked and before the appellants' property caught fire. As such the appellants' claim under the dangerous condition exception would fail anyway.

This case involved no genuine issue of material fact. The defendant, City of Breckenridge, was entitled to judgment as matter of law. This court affirms the trial court's decision.